Dash 1312, Glycine & More v. United States What would a reasonable secretary think was a reasonable reason for extending the deadline? And as I read the record and as I read the regulations, that would require the secretary to take into account a variety of facts and circumstances. Wouldn't it ordinarily? Wasn't that the understanding? All of a sudden, all of a sudden the secretary says, I'm not going to do that anymore. I'm now going to only look at one thing, extraordinary circumstances. And the answer is, he can't do that under our or under Chevron or under anything unless he does it by a formal notice and comment rulemaking. That's my understanding of the law. Explain to me why I misunderstand the law. I believe that 213d-1, the second sentence, was drafted in such a way that it was purposely vague. It talked about the extension of deadlines, requests, withdrawal deadline requests. It didn't talk about whether it applied to timely deadline extension requests or untimely deadline extension requests. Yeah, I want to come back to that point because that's unclear also, but go ahead. But at that time of the clarification, 302b and c were clearly operational as to how deadline extension requests that are timely filed should be handled. And that was with good cause. There were abuses. What is a timely request? Is a timely request one that's made prior to the 90-day expiration period? Correct. And you're saying that if the request is made after the 90-day period, there's a different rule? Yes. Where do you get that from? From the clarification. The 2011. There's two temporal standards. The 2011 document. Correct. Federal register notice, right? Yes. Yeah, but that was never adopted as a regulation, was it? Well, it was adopted, re-promulgated in 1997. It was not a regulatory change under the APA. Am I mistaken about that? The clarification in 2011 was not a part of a notice. Comment rulemaking. Right. Okay. So go ahead. Somewhere in that, they make a distinction between pre and post. There's something very peculiar about this whole sequence. Let me take you back for a moment to the 1989 regulation, which was the adopted regulation. Here's the phrase. The secretary may extend the time limit if it is reasonable to do so. Right? Correct. However, that got changed to read in 1989. The secretary may extend the time limit if the secretary decides that it is reasonable to do so. Does that difference? Neither of you seem to make any issue about it. Does that make any difference? I take it you think not. Could you repeat that for me? You want me to read it again? Yeah. That's interesting. If you look carefully at the history of the regulation. So in 1989. The early regulation said the secretary may extend the time limit if it is reasonable to do so. If it is. If it is reasonable. The later iteration said the secretary may extend the time limit if the secretary decides that it is reasonable to do so. I assume those say the same thing. If I may offer my take on it. I think that in 1997, I believe that the secretary, Commerce, was addressing what they viewed to be. In fact, it says so in the repromulgation language. Addressed abuses that were occurring from 1989 up until 1997. So as they explain in the Federal Register Notice in 1997, as part of the repromulgation language, it was important for the secretary to exercise wide discretion. So I think you may have something there that they were emphasizing. And they say so in the Federal Register Notice repromulgating the 97 reissuance, that it is important in order to curb abuses for the secretary to exercise his or her wide discretion in determining whether or not an untimely filed withdrawal request should be granted. And what I find very interesting also in that 97 repromulgation language, and this is a sentence that was left out of the CIT's first opinion, and I think it may have been done so for a reason, the language that they quote liberally from that 97 repromulgation language, that Federal Register Notice, but they leave out the sentence. To discourage this behavior, the department must have the ability to deny withdrawals of requests for review, even in situations where no party objects. So I think you're on to something. Before it was it, which suggests maybe it was somebody other than the secretary or in addition to the secretary, and here we're talking about the secretary. Okay, Mr. Schwartz, you've used all your time, all your rebuttal time, and you're three and a half minutes over. So we'll extend a small amount of rebuttal time, but we need to move on and hear from Mr. Whistler. Thank you, Your Honors. May it please the Court, I'm Ronald Whistler with Kutak Rock, LLP, and I'm here on behalf of Gleising and Moore. My position is that the district court's decision should be affirmed and it can be affirmed on the basis that the judge provided, which was mainly focusing on the legislative history of the case. But I also believe it could be affirmed on what I argued, and which was the subject of this argument. It was just on the plain language of the regulation and what reasonable means, and that's what I argued before the Court. Is the word reasonable ambiguous? To me it's not. I mean, it's the principle of being reasonable, which in itself does have some leeway, but I mean it's the principle of being reasonable. But the fact that it has leeway doesn't make it an ambiguous term. No, not to me, no. But if an agency were to say, okay, we've promulgated a rule where we're going to make a reasonableness inquiry into something, and now I'm telling you and the public that factors A, B, and C are going to be considered in this reasonableness inquiry, and they publish that in the Federal Register notice, would that be entitled to our deference? I don't think so, because the language in the regulation is still there. And just in practice what happened is a total... Why wouldn't it be, I guess is what I'm wondering. I mean, we have a regulation. We have a regulation that says reasonable, but maybe it's not so clear what that principle actually means in application. So then the agency comes forward. You know, this is hypothetically, there's nothing in the Federal Register when the regulation is promulgated suggesting how the agency is going to apply the reasonableness inquiry. And a year later they publish something in the Federal Register notice saying we want to try to standardize the department's application of this rule, and we've concluded the following three factors, A, B, and C, make a lot of sense in trying to understand whether a certain action is reasonable. Would that be allowed to get our deference? If it was applied properly in practice, perhaps, but... I don't know what that means. When wouldn't it be allowed our deference? When it's not reasonable. Okay, so if factors A, B, and C are not reasonable as factors to consider a reasonableness inquiry, then that would be something that wouldn't get our deference. Because it wouldn't be something... Because there are other reasons. Yeah, they said they gave their one or two, or maybe perhaps three things that they want to look at, but there still remains other things to be looked at to determine whether their determination is reasonable. They're trying to define reasonable by saying we're only going to look at this, and as long as we look at these three things, it's reasonable. When there's the... They're supposed to be a fact-finding or decision-making entity, and they're supposed to make decisions based on substantial evidence. So they're supposed to make a decision what's in front of them, not just these three little rules that they decided in a federal register. Isn't your answer really just that if what they say about how they're going to interpret reasonableness is reasonable, then it gets deference? If it doesn't, it doesn't. Yes, it's something that can be looked at. You can decide... A reviewing court can say is this reasonable, is this unreasonable? Okay, well... It's the whole... Hold on, stop, stop, please, stop. I got confused by your answer because I couldn't quite understand what you're saying for trying to interpret what does reasonable mean and how an agency is going to hopefully consistently apply it. It can't... It can't interpret reasonable to be constrained to a certain number of factors. Here's factors one, two, three, four. Here's what we're going to consider being reasonable. But what happens if there's factors six, seven, eight, and nine? You're not going to consider them at all? You have to consider all factors that are in the record, and that's before you. You have to make a reasoned decision. A reasoned decision that's based on ten factors in front of you cannot be based by saying, oh, we're only going to look at reason one, two, three. That is unreasonable. You have to look at all the factors to make a reasonable decision. So then an agency, under your scenario, could never provide an interpretation of what reasonable means beyond just saying we're going to consider everything and anything. Which is, they're supposed to do that. Could they list a series of factors? They could say things are more important, perhaps. Generally we are going to look at these perhaps more than something else. But you still have to look at everything and make a reasoned decision. It's discretion. You have to exercise some discretion. I know the agency does not like making decisions a lot of times because they can be challenged. Is it your argument that they can't ever define reasonableness other than in a regulation? Or is it your argument that they could try to define reasonableness if they defined it broadly enough, but they can't exclude factors without a regulation? Is that what you're trying to tell us? Or is that too simplistic? When the regulation says that secretaries should act in a way when it's reasonable to do so, it is expected that the secretary will act reasonably, which would be to consider all the evidence in front of him. To me, that's reasonable. And it's unreasonable if you... Let me try to help you. If the secretary articulates four factors, and if it turns out there's another important factor and every reasonable person would have thought a reasonable secretary would have considered it in the assessment of reasonableness, then it's unreasonable to have excluded that factor. But if the factor being excluded is not really something that would be relevant to a reasonableness assessment, the secretary is perfectly within his province to exclude that factor from consideration. Well, that's exercising in reasonableness. That's making a decision based on everything that's in front of you. Some things you can eliminate, some things you can highlight, some things are not relevant. But they could do that in an individual case. They could also do that in a federal register. It would apply more broadly, but it's only going to apply more broadly if it is, in fact, a reflection of everything that was reasonable to be considered. And I also want to say another thing. Can I change this a little bit? Let me ask you a different question. Let me ask you a different question. Today, somebody wants to withdraw their request for review, but it's untimely. They've blown through the 90-day time period. Which rule applies, 213D1 or 302? I think the D. 213D1. Yes. Commerce apparently has the position that it's 302 that applies? Apparently. But that's not something before us, right? No, I think, well, it's not before us because that rule was promulgated after this case was over. Not something we've got to figure out in this case. Right. But I would like to say, you know, in my view... You'd be better off not saying. Okay. Just saying. All right. I think we should, if you don't mind, let Mr. Schwartz have the rest of it. Well, will I be able to? I just want to make a point. Oh, I'm sorry. I thought you were done. No, I don't mean to cut you off. Go ahead. There's one point. In the event that the court agrees with the appellate, there is an issue that still must be considered. Now, it wasn't addressed by the court because the court said we don't have to get to it at this point. Okay. That is the rate that was applied to Gleising and Moore was 453%. It was like an adverse facts. Yeah, very adverse facts. Well, they didn't participate. They decided they wanted to withdraw, and they didn't participate. So we're not, you know, they should get adverse facts available, but it's the rate we're talking about. And there's a rule in, you know, under commercial practice. You want to save the right to challenge that rate. Challenge that rate because it is under court review right now, and as it stands now, that rate is not valid. That shouldn't be. I think we got it. Okay. That's the only thing. Thank you. Okay. Thank you, Mr. Whistler. Mr. Schwartz, we'll give you two minutes of rebuttal time. Your Honors, I wanted to address the second argument that we had in our brief before you all, and that is the CIT directed a result through narrow constraints to commerce. Commerce rightly protested throughout this proceeding that the CIT severely constrained its exercise of its discretion through its remand instructions. The CIT directed commerce that compelling circumstances would call into question any decision on remand, reinstating the previous challenge decision, and that it must decide anew based on any new and compelling circumstance not that despite the circumstances the court has identified could justify disallowing Boudin's withdrawal. That language dictated only one result. As the CIT explained, commerce must reach a new decision that does not apply the interpretation of 213D1. Didn't commerce try to explain all that and soften it up a bit, I thought? No? I mean, didn't the CIT, I'm sorry, didn't the CIT explain all that and soften it a bit? With the second opinion? Yeah. They did try to walk back the initial language. So you were quoting the initial language, weren't you? No, this is the second opinion. Second opinion. Second opinion. Okay, go ahead. This is the second opinion. And so commerce really had no choice but to do exactly what the CIT directed them to do. Instead of instructing commerce to explain why the ruling was reasonable and why it's not plainly erroneous and deferring to commerce on how to interpret this regulation, the CIT instead, through very constraining language, dictated what the result should be. Okay, thank you, Mr. Schwartz. I thank both counsel. The case is taken under submission. Any more ayes?